UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-24311-Civ-WILLIAMS

RABBI STEVEN (YISROEL) BODKINS
and his wife, RIVKAH BODKINS,

                 Plaintiffs,

v.

ABIGAIL MAGID a/k/a
"DEBBIE TELLER" d/b/a
AD-KAN ENOUGH.COM,
ANDREW (a/k/a "AVRAM") SKUROWITZ,
AVRAM PLONI 1-5 and AVA PLONI 1-5,

                 Defendants.

_____/

## FIRST AMENDED COMPLAINT

      Plaintiffs RABBI STEVEN (YISROEL) BODKINS ("Rabbi Bodkins") and his wife, RIVKAH BODKINS ("Mrs. Bodkins"), for their First Amended Complaint against Defendants ABIGAIL MAGID a/k/a "DEBBIE TELLER" d/b/a ADKANENOUGH.COM ("MAGID"), ANDREW (a/k/a "AVRAM") SKUROWITZ ("SKUROWITZ"), AVRAM PLONI 1-5 and AVA PLONI 1-5, state as follows:

## STATEMENT OF THE CASE

      This action is by two dedicated and respected Miami-Dade, Florida, educators who have taught and inspired hundreds, if not thousands, of students in Florida elementary schools, middle schools, high schools, and after-school programs over the past twenty (20) years. They have now been wrongfully maligned with scurrilous and untrue charges of "sexual abuse" of children supposedly committed by Rabbi Bodkins

10, 15 and 20 years ago. Rabbi Bodkins has now been portrayed as a current threat to children here in Miami -- notwithstanding that even the most recent of the false allegations are from 8-10 years ago, and Rabbi Bodkins was completely exonerated by the Judge hearing that matter in Pennsylvania. As parents of four children themselves, and aware that real abuses are unfortunately perpetrated against children in our society, Rabbi and Mrs. Bodkins unqualifiedly support every lawful effort to protect the children of our communities and every legal step taken to prosecute anyone who causes any child to be harmed. However, Plaintiffs also believe, with equal conviction, that teachers and others working with our children who are innocent of criminal or morally repugnant behavior need to be protected from lynch mobs and witch hunts incited by scurrilous and unfounded accusations, such as those accusations rendered by these Defendants against these Plaintiffs as enumerated in this Complaint. If these Defendants' outrageous and unlawful conduct is permitted without rebuke or consequences, it would encourage others to engage in such reprehensible misconduct, too. And then no teacher would be safe.

## PARTIES

1.    Rabbi Bodkins, at all times relevant, resided in Miami-Dade County, Florida.

2.    Mrs. Bodkins, at all times relevant, resided in Miami-Dade County, Florida.

3.    Defendant, ABIGAIL MAGID a/k/a "DEBBIE TELLER" d/b/a ADKAN ENOUGH.COM ("MAGID"), at all times relevant, was a citizen of the State of New York and resided in Brooklyn, New York.

4.    Upon information and belief, MAGID is the owner or manager of the website "ADKANENOUGH.COM" ("AD-KAN"), posts her own messages and those of others on that website using the pseudonyms "Debbie" and "Debbie Teller," and exercises editorial power over content in that website.

- 2 -

5.    Plaintiffs are compelled to make these assertions about MAGID and AD-KAN "upon information and belief" because AD-KAN's domain name, "adkanenough.com," was purchased through Register.com, a well-known Internet domain registrar, and AD-KAN used and uses a Register.com service known as "Domain Discreet," which renders the domain owner's name and contact information unavailable to the public.

a. AD-KAN's website hosting is provided by Weebly, Inc., and, as is normal for hosting companies, Weebly does not make available to the general public the name of the owner of a hosting account.

b. ADKAN does not appear to indicate anywhere on its website that it is a corporate entity. *See* http://www.adkanenough.com, *passim* (last visited Nov. 8, 2013). Indeed, ADKAN requests that persons wishing to "sponsor" ADKAN send their donations to "Chaya's Community, Inc." *See* http://www.adkanenough.com/we-need-your-help.html (last visited Nov. 8, 2013).

c. "Chaya's Community, Inc.," appears to be a corporation headquartered in Brooklyn, NY, too. *See* http://chayascommunity.com/Donate.html (last visited Nov. 8, 2013). Plaintiffs expect that appropriate discovery will reveal whether Chaya's Community, Inc., or other corporate entities may: (1) need to be added as additional defendants; (2) held liable for the wrongful conduct by ADKAN enumerated in this action; and (3) held responsible for any judgment or other relief obtained in this Court.

6.    Defendant SKUROWITZ, at all times relevant, was a citizen of the State of Florida and domiciled in the City of Hollywood in Broward County, Florida.

7.    AVRAM PLONI 1-5 and AVA PLONI 1-5 are those persons whose identities are unknown at this time, but whom Plaintiffs expect will be identified in the course of appropriate discovery in this action, and who have posted defamatory statements on the AD-KAN website or have otherwise engaged in tortious conduct against Plaintiffs that would be subject to the jurisdiction of this Court. Such persons may include, but are not limited to, persons posting "comments" on the Internet who were and are hiding behind pseudonyms like "chaim," "Ronit," "Tammy Klein," "Chaim" (with a capital "C"), "Bobby Miller," "MICHAL," "sister of victim," "Sibling

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

of another victim," "Pinchas," and "Leah."

8.    SKUROWITZ and his wife, AVIVA, are the key persons spreading defamatory information to AD-KAN and others, posting defamatory comments on AD-KAN under pseudonyms -- and on other websites and blogs.

9.    Plaintiffs has and will be filing discovery requests to: (1) obtain information from AD-KAN and SKUROWITZ identifying other potential Defendants hiding behind pseudonyms; and (2) issue subpoenas to third-parties to obtain documents and deposition testimony further identifying relevant persons and tortious conduct.

10.    Plaintiffs intend to seek leave of court to amend this Complaint in an expeditious manner to add parties and claims as appropriate Defendants are identified and further tortious conduct uncovered.

## JURISDICTION

11.    The Circuit Court for the State of Florida has jurisdiction of these matters as the amount in  controversy exceeds $15,000.00, exclusive of prejudgment interest, costs and attorney's fees.

12.    Venue is proper in Miami-Dade County, Florida, which is the location of the place where the parties reside, the location where the parties conduct business, and/or the place where the wrongs or damages complained of herein occurred.

13.    Florida's Long Arm statute, §48.193(1)(a)(2) provides, in pertinent part:, that:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from … Committing a tortious act within this state.

14.    Defendant MAGID, at all times relevant, did broadcast published statements to persons in the State of Florida (and, indeed, specifically addressed

- 4 -

those statements to the community in the State of Florida and those statements were accessed by persons in Florida), did transact business and had sufficient minimum contacts in the State of Florida, and a substantial part of the events or omissions giving rise to the claim occurred in the State of Florida. Accordingly, the wrongful acts described herein, namely MAGID committing the tortious acts within and directed to Florida, subject MAGID to personal jurisdiction in Florida, pursuant to Fla. Stat. §§48.193.

15.    Defendant SKUROWITZ, at all times relevant, did broadcast and publish defamatory statements about Rabbi Bodkins in the State of Florida and elsewhere.

16.    AVRAM PLONI 1-5 and AVA PLONI 1-5, at all times relevant, did broadcast published statements to persons in the State of Florida and those statements were accessed by persons in Florida, did transact business and had sufficient minimum contacts in the State of Florida, and a substantial part of the events or omissions giving rise to the claim occurred in the State of Florida. Accordingly, the wrongful acts described herein subject AVRAM PLONI 1-5 and AVA PLONI 1-5 to personal jurisdiction in Florida, pursuant to Fla. Stat. §§48.193.

## BACKGROUND

17.    Rabbi Bodkins, for over 20 years, has taught and inspired hundreds and hundreds of children in elementary school, middle school, high school and after-school programs.

18.    Mrs. Bodkins, for over 16 years, has taught and inspired hundreds of children in elementary school, middle school, high school and after-school programs.

19.    As is set forth in detail below, Defendants, MAGID, SKUROWITZ and AVRAM PLONI 1-5 and AVA PLONI 1-5 have published false and unprivileged statements that exposed and continue to expose Rabbi Bodkins to distrust, hatred, contempt, ridicule or obloquy and which causes Rabbi Bodkins to be avoided, and which statements have a tendency to injure Rabbi Bodkins in his office, occupation,

- 5 -

business or employment.

20.    It is the natural and proximate consequence of the statements made that such statements necessarily causes injury to a person in his personal, social, official or business relations of life.

21.    MAGID, on or about October 20, 2013, did "post" and thereby publish an article about Rabbi Bodkins on her website AD-KAN. That article was available on the Internet at http://www.adkanenough.com/updates and was headlined: "WARNING! Rabbi Yisroel Bodkins allegedly molests young boys in Miami." A copy of that published article is attached as Exhibit "1."

22.    MAGID made sure to direct her article to the State of Florida, Indeed, AD-KAN's October 20, 2013, article starts with:

### "IMPORTANT MESSAGE TO THE MIAMI COMMUNITY"

23.    MAGID, on or about October 21, 2013, did "post" and thereby publish another article about Rabbi Bodkins on her website AD-KAN. That article was also available on the Internet at http://www.adkanenough.com/updates and was headlined: "Bodkins and Parents Right to Protect their Children." A copy of that published article is attached as Exhibit "2."

24.    The October 20, 2013, article and October 21, 2013, contained numerous statements of supposed "facts" including, but not limited to:

    a.    Rabbi Bodkins, "allegedly molests young boys in Miami";

    b.    Rabbi Bodkins, "was recently fired from an elementary Yeshiva in Miami Beach after word got out that three individuals reported to police that they were sexually abused by him";

    c.    "Bodkins has refused to take a lie detector"; and

    d.    "Torah Umesorah has Bodkins listed on their sex offender registry."

Id. (last visited Nov. 8, 2013). See Ex. 2.

25.    Those statements were absolutely false and/or completely misleading,

- 6 -

and were published and maintained with malice in a manner only meant to put Rabbi Bodkins and Mrs. Bodkins in the worst possible light, and keep them there.

a.   Rabbi Bodkins has never molested anyone anywhere in his life, and is certainly not aware even of allegations of such horrific conduct here in Miami.

b.   Rabbi Bodkins was *not* fired from any Yeshiva elementary school in Miami Beach at the time and was only unofficially "suspended" by mutual agreement for a short period while school authorities, confronting wild rumors circulating through the community, conducted their own due-diligence investigation.

   i.   That investigation concerned a "report" filed by one very-disturbed young man in 2011 alleging supposed "sex abuse" by Rabbi Bodkins in a Pennsylvania summer camp 8, 9 and 10 years ago (2003-2005).

   ii.   The police authorities and Monroe County, Pennsylvania, district attorney's office formally investigated that single complaint, brought by that one accuser (and interviews with two friends of his that he convinced to be interviewed by the police). Those authorities declined to file any charges whatsoever and closed the case. *See* Pennsylvania Status Letter, dated September 4, 2013, attached as Exhibit "3."

   iii.   The Monroe County Children and Youth Services (MCCYS") had opened a Child Protective Service Investigation ("Childline") case based solely on the accuser's statement and without having interviewed Rabbi Bodkins. MCCYS argued the case on behalf of that same single accuser to the Commonwealth of Pennsylvania Department of Public Welfare, the State's civil child-abuse authority, and which is specifically charged with conducting detailed investigations with heightened attention to allegations made by children in this sensitive area. After examining all of the witnesses and reviewing all of the evidence presented, the Judge conducting the evidentiary hearing completely exonerated Rabbi Bodkins, expressly finding that "the lack of details" by the accuser was "substantial" and

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

that the accuser was, in the Court's own words, "not credible." The Judge recommended that the case be "expunged" from the public record, which recommendation was adopted in its entirety by Order of the Regional Manager of Pennsylvania's Bureau of Hearings and Appeals on September 17, 2013. While the accuser had the right to appeal that decision, no appeal was ever timely filed.

c.   Rabbi Bodkins was never asked by any authority to submit to any "lie detector" test, so there was no official test to "refuse." On the other hand, the Judge with much experience in hearing these sensitive matters and who presided over hearing the 2003-2005 charge found, with respect to Rabbi Bodkins' testimony at the hearing:

"His demeanor and his candor on the witness stand was sincere. There was no hesitancy or fumbling for answers to questions posed. More specifically, he was clear and concise in his direct testimony and cross-examination did nothing to discredit his testimony."

d.   Rabbi Bodkins is not now – and never was – listed on the "sex offender registry" maintained by Torah Umesorah, the National Society of Hebrew Day Schools ("Torah Umesorah").

i.   Torah Umesorah is a national organization established in New York in 1944 and now with oversight over 750+ Orthodox Hebrew day schools across the country.

ii.  Its "sex offender registry" is a service the national organization provides to principals and staff at schools to consult before hiring any personnel.

iii. After a review of the record and its own investigation, Torah Umesorah "strongly recommend[ed] that Rabbi Bodkins be reinstated to his position as classroom rebbi [religious teacher]." *See* E-Mail to Yeshiva Elementary School from Rabbi Dovid Nojowitz, Nat'l Dir. of Torah Umesorah (Sept. 29, 2013), attached as Exhibit "4" (private e-mail addresses redacted to preserve privacy in publicly-filed Complaint).

iv.  Indeed, when the AD-KAN article with that particularly false and particularly hurtful accusation

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

appeared, Rabbi Bodkins himself contacted Torah Umesorah to inquire about where AD-KAN could reasonably have obtained that false information, and was told by Torah Umesorah itself:

> "your name is NOT on Torah Umesorah's registry list of alleged child abusers, and your name never was on our list. Any rumor to that effect is simply that – a rumor, without any truth or basis."

*See* E-mail to Rabbi Yisroel Bodkins from Rabbi Dovid Nojowitz, Nat'l Dir. of Torah Umesorah (Oct. 21, 2013), attached as Exhibit "5" (private e-mail addresses redacted to preserve privacy in publicly-filed Complaint).

v.  As the published falsehoods by AD-KAN continued to whip up frightened and angry mobs of concerned parents in the South Florida Jewish community, Torah Umesorah communicated its concerns to Yeshiva Elementary School:

> "We at Torah Umesorah firmly believe, as verified by the court's decision, that Rabbi Bodkins is innocent of the original charges … it is urgent for the school to issue a letter of clarification that there is no basis for accusation of child molestation by Rabbi Bodkins.

Considering the fact that a web blog has been created which has denigrated Rabbi Bodkins, the need for clarification becomes all the more crucial. We trust you understand the strong implications the school's decision could have on Rabbi Bodkins and his entire family for years to come, and we urge you to issue this letter of clarification as soon as possible."

26.  As of the date of the original filing of this Complaint, MAGID's AD-KAN articles about Rabbi Bodkins were still available on the Internet at http://www.adkanenough.com/updates. While it appears that edits are constantly

- 9 -

made, the only reason for MAGID to keep the substance of her own statements and defamatory "comments" submitted in light of the foregoing is actual malice towards Rabbi Bodkins.

27. Before and during this period and to the present day, defendant SKUROWITZ published false and unprivileged statements, clearly about Rabbi Bodkins, to third parties, including but not limited to:

a.    Rabbi Bodkins 'took and failed a lie detector test';

b.    There 'were multiple plaintiffs and investigations' against Rabbi Bodkins, even though SKUROWITZ knew that the Pennsylvania authorities did not proceed with any complaint other than the one by the original complainant (and interviews with two friends), which complaint was dismissed, Rabbi Bodkins exonerated and the record ordered expunged.

c.    The case against Rabbi Bodkins was dismissed on a "technicality," notwithstanding the fact that the judge hearing the case expressly found the complainant to be "not credible";

d.    Even after the Pennsylvania criminal investigation was closed by the District Attorney and the Department of Public Welfare record was expunged, SKUROWITZ said that things were not going well for Rabbi Bodkins and that Rabbi Bodkins was in "Big Trouble."

e.    In an effort to sell his own anti-abuse program and further his own career, SKUROWITZ spoke to numerous people in Miami-Dade and Broward counties, Florida, and elsewhere, including before a group of Day School principals, giving sufficient information to identify Rabbi Bodkins and claiming that Rabbi Bodkins was guilty.

- 10 -

     f.     After the Pennsylvania investigation was closed and Rabbi Bodkins cleared, SKUROWITZ made comparable statements to various parents and significant donors to Yeshiva Elementary School in order to deprive Rabbi Bodkins of his livelihood.

28.    Upon information and belief, Yeshiva Elementary School has been besieged by crowds of hysterical parents and financial supporters, whipped into a frenzy in large part by AD-KAN and SKUROWITZ's published falsehoods.

29.    Rabbi Bodkins and Mrs. Bodkins reside and work in South Florida, and this information was publically accessible to anyone, even to those in communities where they live and work.

30.    The AD-KAN articles specifically mention Rabbi Bodkins, and AD-KAN even included a photograph of him.

31.    The AD-KAN website also includes a section where viewers can post "comments" and responses to MAGID's posts.

32.    Posts by MAGID (upon information and belief, under the pseudonym "Debbie") and comments by other individuals (including, upon information and belief, AVRAM PLONI 1-5 and AVA PLONI 1-5) expressly mention Rabbi Bodkins or refer to him.

33.    AD-KAN's post of October 21, 2013, claims that, "Whether [Rabbi Bodkins] is safe or not, Ad-Kan believes that it is the right of the public to have that information. Parents need to protect their innocent children and should be privy to all available information regarding sex offenders."

34.    In response to MAGID's October 20, 2013, article, many, many, comments were apparently submitted to AD-KAN about Rabbi Bodkins, some in support and some against. Plaintiffs do not currently have copies of all those posted comments, but expect to obtain them through discovery requests to defendant MAGID, and through subpoenas issued to appropriate non-parties. Despite the number of

- 11 -

comments actually submitted, only nine (9) comments remained as of the time Plaintiffs prepared this Complaint. *See* Ex. 2.

35.   In response to MAGID's October 21, 2013, article, at least forty-eight (48) comments were apparently submitted to AD-KAN about Rabbi Bodkins, some in support and some against. Plaintiffs have managed to obtain copies of those posted comments, *see* Exhibit "6," but do not know at this time whether those 48 were all that were submitted. Plaintiffs expect to obtain all relevant evidence through discovery requests to Defendant MAGID, and via subpoenas issued to appropriate non-parties. Despite the number of comments submitted, however, only eleven (11) comments remained as of the time Plaintiffs prepared this Complaint. *See* Ex. 1.

36.   A review of the 48 posted comments preserved in Exhibit 6 that once existed on the AD-KAN web-site reveals that those deleted included:

a.   (10/21/2013 11:31 am) "Did you actually speak with Torah [U]mesorah? Because apparently, [R]abbi [N]ojowitz from Torah [Umesorah] is stating publicly that this is sheker [false] and that [Rabbi Bodkins] is not on any sex offenders list and that they support him. Please clarify or get a statement from Torah [U]mesorah backing up this allegation that he is on their sex offenders list."

b.   (10/21/2013 1:24 pm) "I just hung up the phone with [U]mesorah. They said that this allegation is completely false and that Rabbi Bodkins is not on any Sex Offenders list. Please allow your hopefully unbiased reporting to reflect that."

c.   (10/23/2013 2:49pm) ". . . [Torah Umesorah] fully deny this terrible allegation and are in the process of composing a letter in support of [R]abbi Bodkins. Secondly, although [Torah Umesorah] might not normally take sides in this matter, in this particular case they definitely did get involved and sided with [R]abbi Bodkins. Probably because the secular court system expunged the whole matter and there is not a shred of evidence against him."

d.   (10/21/2013 2:33pm) "Spoke to Torah [U]mesorah and it's absolutely false!!"

- 12 -

e.   (10/23/2013 10:29am) "Here are two facts:

   1. I telephoned Torah [U]mesorah yesterday, as did my wife (2 separate calls) and we were both told that the information you posted about them having Rabbi Bodkins on a sex offender list is false. I was specifically told that they have been working to try and get Rabbi Bodkins reinstated. That is a fact and I urge all people on the blog to phone Torah [U]mesorah so they can hear this message personally and not have to take my word for it.

   2. In a 12-page Court documents, Rabbi Bodkins was found innocent; the accuser was found "not credible" and Rabbi Bodkins was found "credible."

f.   (10/23/2013 10:32am) "In addition, the court EXPUNGED the case from the record. This was a complete exoneration."

g.   (10/23/2013 10:34am) "One final thing: you asked why Rabbi Bodkins was fired from Yeshiva Elementary. The reason is that they did not want to fire him, but a very powerful parent (read wealthy donor) threatened to take their children and support out of the school and got other parents to threaten as well until the school had no choice. He was NOT fired because of evidence, he was fired because the school could not afford to lose the money from this parent."

h.   (10/23/2013 1:20pm) "Just to add to your comment, who says that [R]abbi Bodkins is actually fired. When I asked I was told that he is on a leave of absence for now as the school makes a decision (I assume regarding the uproar that these false rumors have caused) but until someone is actually fired, and anonymous blog should not be making such statements without calling the school to verify."

i.   (10/24/2013 1:13pm) "… It is so important that you and other friends of the Bodkins family are here for them to defend his honor and support them in this very difficult time. What a terrible thing to be accused of falsely, just awful."

j.   (10/25/2013 8:45am) "I read in one of the deleted comments that of the three police reports, two were not reports of molestation and dropped out, and that the third was deemed not credible. I verified this as fact with some[one] who is close to the case. This is very important information and a big misrepresentation to claim that there are actually three "victims." It is clear to me that Rabbi Bodkins is the real victim here."

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

k.   (10/25/2013 1:11pm) "Again, stop deleting my post. The picture associated w[ith] the [R]abbi Bodkins is of my brother. He is not sitting on [R]abbi Bodkins lap. You do not have permission to use that picture and we are very upset. It is a violation of our privacy. Especially since my brother is the furthest] thing from a victim. Take the picture down or we will take legal action."

37.   The now-missing posts were deleted by MAGID herself, or by some of AVRAM PLONI 1-5 and AVA PLONI 1-5, either at MAGID's direction or in concert with her.

38.   Plaintiffs expect to obtain in the course of appropriate discovery full and accurate copies of all of the posts that were once on the AD-KAN website between October 20, 2013 and this date.

39.   Plaintiffs submit that a comparison of what was actually posted by the public on the AD-KAN website and what was left there by MAGID will reveal that, overwhelmingly, the purpose of MAGID deleting comments on the AD-KAN website was to put Rabbi Bodkins and Mrs. Bodkins in the worst possible light, and keep them there.

40.   Notwithstanding AD-KAN's righteous-sounding statement that "parents . . . should be privy to all available information regarding sex offenders," any posts that questioned the false statements posted on AD-KAN or questioned AD-KAN's campaign against Rabbi Bodkins, or made any statements in support of Rabbi Bodkins were deleted by MAGID herself, or by some of AVRAM PLONI 1-5 and AVA PLONI 1-5, either at MAGID's direction or in concert with her. *Compare* Ex. 6 *with* Ex. 1.

41.   Rabbi Bodkins' employer(s) are aware of these articles and comments, and of SKUROWITZ's defamatory statements.

42.   The parents of Rabbi Bodkins' past students in Florida have accessed and are aware of these articles and comments as intended by MAGID and SKUROWITZ, who expressly directed their defamatory statements to the Miami and Broward

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

County communities.

    43.    The parents of Rabbi Bodkins' current students have accessed and are aware of these articles and comments as intended by MAGID and SKUROWITZ, who expressly directed the defamatory statements to the Miami and Broward County communities.

    44.    Friends and neighbors in Rabbi Bodkins' and Mrs. Bodkins' community have accessed and are aware of these articles and comments as intended by MAGID and SKUROWITZ, who expressly directed the defamatory statements to the Miami and Broward County communities.

    45.    Others have approached Rabbi Bodkins and asked if the information is true.

    46.    Rabbi Bodkins is embarrassed and humiliated because of these publications.

    47.    Others have approached Mrs. Bodkins and asked if the information is true.

    48.    Mrs. Bodkins is embarrassed and humiliated because of these publications.

    49.    Rabbi Bodkins and other persons communicated to MAGID by e-mail and asked MAGID to remove the factually-false posts from her AD-KAN website, and to publish a retraction.

    50.    MAGID refused to publish any retractions, but appears to have made some edits to some of her own earlier posts. Defamatory comments by others were left on the site.

    51.    Indeed, MAGID failed to take any reasonable steps to research the accuracy of AD-KAN's publications prior to posting them and, failed to reasonably act in a timely manner when many persons provided specific references for MAGID to verify the falsity of much of AD-KAN's posts and remaining comments.

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

52.    Moreover, MAGID refused to post material that AD-KAN received, even when such materials directly responded to challenges put forth by AD-KAN itself

53.    The purpose of MAGID failing to post comments she received that responded to her challenges on the AD-KAN website was to put Rabbi Bodkins and Mrs. Bodkins in the worst possible light, and keep them there.

54.    In responding to people questioning the truthfulness of posts appearing on AD-KAN, MAGID published yet additional false statements via e-mail. Plaintiffs expect to obtain in the course of appropriate discovery full and accurate copies of all of the e-mails published by MAGID, but have attached one such communication to this Complaint as Exhibit "7" (private e-mail address redacted to preserve privacy in publicly-filed Complaint).

55.    On October 31, 2013, the principal of a local North Miami Beach high school, wrote to MAGID at AD-KAN's e-mail address, stating:

> I was very surprised that you have failed to immediately post the announcement by many of our leading local rabbis that I understand was sent to you many days ago endorsing Rabbi Bodkins. Your failure is especially troubling in light of your vehement public accusations and supposedly-honest express request that, "any or all of these rabbis make a public announcement via Ad-Kan to the community that Bodkins is either safe to work with young boys or not."
>
> In addition, as your own post says clearly, in the copy below ⬇ if Rabbi Shain would ...then you would take it seriously, so why haven't you posted [R]abbi [S]hain's endorsement?

*See* Ex. 7.

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

56.   The "announcement," which was an effort by many leading community leaders and educators to respond to AD-KAN's and the frenzied mob's challenge, is:

57.   MAGID responded quickly, and MAGID's response (included in Exhibit 7) contained the following statements:

> This piece of paper is no proof at all.
> There is no date. Who says this wasn't published before the accusations surfaced? I have already recieved an outdated email from Torah umesorah which came from bodkins.
> Ryback denied sending it on that date.



**Announcement to the Greater Miami Community**

**Opening the ADELPHIA-MIAMI BOYS PROGRAM**

Under the guidance and leadership of HaRav Yeruchim Shain, shlita, Rosh HaYeshiva of Adelphia Yeshiva of New Jersey

The program is designed for young men, age 14-17 who would appreciate and look forward to growth through spending time and connecting with other young men and talented caring Rabbis.

There will be activities, BBQ's, Melavah Malkahs and other programs to help every young man enjoy, grow and connect in Judaism.

Program director, Rabbi Yisroel Bodkins

We look forward to notifying you of the details and welcome you to our grand opening program.

Haskomos of the following Rabbonim:

Rabbi Yaakov Tzvi Blejer  Rosh Kollel North Miami Beach

Rabbi David Lehrfield -Young Israel of Greater Miami

Rabbi Ephraim Leizerson – Rosh Menahel Bais Yaakov

Rabbi Binyamin Luban- Rosh Yeshiva, Yeshivas Toras Chaim

Rabbi Moshe Matz- Director Agudas Yisroel of Miami

Rabbi Yechiel Perr -Rosh Yeshiva Far Rockaway Yeshiva

Rabbi Ephraim Shapiro- Shaaray Tefilla North Miami Beach

Rabbi Yisroel M. Janowski - Menahel, Yeshiva Elementary School

- 17 -

> Whose lying Ryback or Bodkins? Mmmm I wonder. If its TUM whose lying then I no longer trust them and if it bodkins lying then I don't trust his latest piece of paper.
> Either way its not looking good.
> Someone's lying.
> The rabbis or bodkins:?
>
> Bottom line is that bodkins has casued tremendous damage to so many children I can't even count them on one hand. And that means that he's not coming off adkan for a very long time.- probably forever since there is no cure for pedophilia.

58.   Many of the statements of "fact" in MAGID's e-mail are also false:

a.   Rabbi Bodkins did not send any "e-mail from Torah Umesorah to AD-KAN;

b.   Plaintiffs are informed that Rabbi Ryback does not recall having any communication with AD-KAN at all – and did not send anything to anyone in regards to this matter, let alone denying doing so on a particular date;

c.   Nobody was lying, other than MAGID via AD-KAN;

d.   Rabbi Bodkins has not "caused damage to so many children," and certainly not so many that one "can't even count them on one hand"; and

e.   MAGID's closing sentence directly accuses Rabbi Bodkins of "pedophilia."

59.   Attached as Exhibit "8" (private e-mail address redacted to preserve privacy in publicly-filed Complaint) is one final e-mail, in which the writer attempted to put MAGID on notice of all of the false and misleading statements contained in: (1) MAGID's own posts on her AD-KAN web site; (2) the select anti-Bodkins "comments" that MAGID allowed others to post; and (3) MAGID's specious response to previous e-mails:

> I have 4 things to tell you.
> 1-Call Torah Umesorah and ask rabbi Dovid [N]ojowitz the director of Torah

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

Umesorah about this matter. He will tell you (and Rabbi Ryback will concur) that [R]abbi Bodkins is not and was not on any sex offenders list. When you posted on your blog "we are aware that rabbi Bodkins is on a Torah Umesorah sex offenders list" that is an outright lie and since I spoke directly to TUM and asked them, you can do the same. And if you want to come back and tell me that you spoke to someone and they said otherwise, please be prepared to give me the name of who you spoke with, because I spoke with [R]abbi [N]ojowitz, the director of TUM. Again... CALL THEM AND ASK THEM FOR YOURSELF WHAT THEIR POSITION ON RABBI BODKINS IS. If you ask, you may be surprised by what you hear.

60.    MAGID did not respond to the e-mail attached as Exhibit 8.

61.    MAGID did not call Torah Umesorah before publication to confirm that Rabbi Bodkins was not, and had never been, on any "sex offenders list."

62.    After publication, MAGID did not timely publish any retraction of that false statement.

63.    MAGID did not call Rabbi Nojowitz before publication.

64.    MAGID did not call Rabbi Ryback before publication.

65.    The communication in Exhibit 8 put MAGID and her cohorts directly on notice about the letter referred to in paragraph 52 above:

2- the letter of support was put out this week and signed this week by every rabbi in this list, a group of rabbi that represent a cross section of Torah Jewry in south [F]lorida. If you glance through the names you will even see the name of RABBI JANOWSKI the principal of [Y]eshiva [E]lementary [S]chool. Call any one of these rabbis, they are all listed, and ask them if this letter, and this program, is from this week or from a while back.

66.    MAGID did not call any of the rabbis who signed the letter referred to in paragraph 52 above to confirm that it was prepared and signed in direct response to AD-KAN's "challenge" and to tell everyone that "[Rabbi] Bodkins is safe to be around children."

67.    MAGID did not post the e-mail letter on her AD-KAN web site.

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

68.   MAGID did not post the announcement by the rabbis on her AD-KAN web site.

69.   MAGID did not withdraw the challenge on her AD-KAN web site.

70.   The communication in Exhibit 8 continued:

> 3- as someone who has been following this case closely, where in the world do you get your following statement from...
> Bottom line is that bodkins has casued tremendous damage to so many children I can't even count them on one hand.
>
> There is one "victim" who was found "not credible" by the courts. There were his two good friends, both of whom have said, and continue to say that they were not molested or abused, but rather they were "uncomfortable" with the extra attention that he paid to them. And that's it. Nada. Kaput. Even with all this PR, not one more victim has surfaced. How do you explain this?

71.   MAGID simply did not respond.

72.   The communication in Exhibit 8 concluded:

> 4- The victim advocacy groups are always[s] protesting the incidences in the frum world where people run to the rabbis with these allegations. They say you should go to court and let them decide. That is what was done here. It was brought to court. The judge found the victim to be "not credible" and expunged the case. So now, the court isn't good enough? But apparently, the rabbis aren't good enough either because their letter of support isn't being accepted by you as well. so what are we left with? A system of vigilante justice where you, or magenu gets to decide who is innocent and who is guilty?
>
> "Debbie" I understand that you have had a traumatic past and therefore you strongly identify with the alleged "victim" but in this case there is no evidence, definitely not "more victims than you can count..." And a case that is being retried in the court of public opinion after being tried by the courts. What in the world can possibly be your justification?

73.   MAGID simply did not respond.

- 20 -

74.   MAGID's October 20, 2013, and October 21, 2013, articles were not removed from AD-KAN.

75.   MAGID's false statements were not retracted nor properly corrected on AD-KAN.

76.   The previously-deleted comments questioning AD-KAN's statements or otherwise in support of Rabbi Bodkins were not restored.

77.   New comments with information or submissions in support of Rabbi Bodkins were not posted.

78.   The announcement from rabbis that was responsive to the challenge as specifically requested by AD-KAN was never publically acknowledged nor posted. Nor does it appear that MAGID made any reasonable effort whatsoever to verify the information.

79.   Accordingly, as to all counts, the Defendants published false and unprivileged statements, clearly about Rabbi Bodkins, to third parties, which caused damage to Plaintiffs.

## COUNT I – DEFAMATION
### (LIBEL/SLANDER *PER SE*)

80.   Plaintiffs incorporate by reference each of the allegations in the above numbered paragraphs 1-79.

81.   Defendants MAGID, SKUROWITZ and, upon information and belief, AVRAM PLONI 1-5 and AVA PLONI 1-5, communicated, orally and in writing, the false statements about Rabbi Bodkins to third parties not the Plaintiffs, specifically but not limited to, other employers and parents of children in Rabbi Bodkins' community and others.

82.   Rabbi Bodkins was specifically identified in the defamatory matter promulgated by the Defendants.

83.   The statements were made either with express malice or without reasonable care to determine their falsity, or with reckless disregard for the truth.

- 21 -

84.    The falsity of the statements caused injury, both actual and presumed, to Plaintiff.

85.    As a direct and proximate result of Defendants' defamation of Plaintiffs, Plaintiffs have suffered an injury to their reputation and loss of employment opportunities, and since the defamatory statements of the Defendants were intentional, with malice or with reckless disregard as to whether they were false or not, the Plaintiffs are entitled, upon a proper evidentiary showing, to punitive damages in addition to the damages suffered.

## COUNT II – DEFAMATION
### LIBEL / SLANDER *PER SE* (Moral Turpitude)

86.    Plaintiffs incorporate by reference each and every allegation made in the above-numbered paragraphs 1-79.

87.    Defendant MAGID, SKUROWITZ and, upon information and belief, AVRAM PLONI 1-5 and AVA PLONI 1-5, published untrue statements orally and in writing.

88.    The libelous and slanderous language stated as a matter of fact that Plaintiff Rabbi Bodkins had sexually molested and harmed children.

89.    Plaintiff Rabbi Bodkins was specifically identified in the defamatory matter promulgated by the Defendants.

90.    These statements of purported "fact" accuse Plaintiff Rabbi Bodkins of moral turpitude.

91.    The untrue statements identified Rabbi Bodkins, and were published to third parties, specifically but not limited to, other employers and parents of children in Rabbi Bodkins' community and others.

92.    The statements were made without reasonable care to determine their falsity.

93.    Such statements are per se libelous and slanderous.

94.    As a direct and proximate result of Defendants' defamation of Plaintiffs,

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

Plaintiffs have suffered an injury to their reputation and loss of employment opportunities.

95.   Plaintiffs are entitled to punitive damages in addition to the damages suffered upon a proper evidentiary showing.

## COUNT III – DEFAMATION
### LIBEL / SLANDER *PER SE* (Harm to Business Reputation)

96.   Plaintiffs incorporate by reference every allegation in the above-numbered paragraphs 1-79.

97.   Defendant MAGID, SKUROWITZ and, upon information and belief, AVRAM PLONI 1-5 and AVA PLONI 1-5, have made untrue statements, orally and in writing, that hurts Rabbi Bodkins' business, trade and profession as a teacher.

98.   The untrue statements were made without reasonable care to determine their falsity.

99.   The libelous language stated as a matter of fact that the Plaintiffs had sexually molested children and otherwise harmed them.

100. The libelous statements were published in that Defendants MAGID, SKUROWITZ and, upon information and belief, AVRAM PLONI 1-5 and AVA PLONI 1-5, to third parties not the Plaintiff, specifically but not limited to, other employers and parents of children in Rabbi Bodkins' community and others.

101.   The publications of these false statements have caused Bodkins damages.

102.   Such statements are per se libelous and slanderous.

103.   As a direct and proximate result of Defendants' defamation of Plaintiffs, Plaintiffs have suffered an injury to their reputation and loss of employment opportunities.

104.   Plaintiffs are entitled to punitive damages in addition to the damages suffered upon a proper evidentiary showing.

- 23 -

## COUNT IV- DEFAMATION
## LIBEL/SLANDER PER SE (Commission of a Crime)

105.  Plaintiffs incorporate by reference each and every allegation made in the above-numbered paragraphs 1-79.

106. Defendant MAGID, SKUROWITZ and, upon information and belief, AVRAM PLONI 1-5 and AVA PLONI 1-5, have made untrue statements, orally and in writing, about Plaintiff that accuses Rabbi Bodkins of the commission of a crime.

107.  The published statements stated as a matter of fact that the Plaintiffs had sexually molested and otherwise harmed children.

108.  These statements of purported "fact" directly accuse Plaintiff Bodkins of commission of a crime.

109.  Defendants MAGID, SKUROWITZ and, upon information and belief, AVRAM PLONI 1-5 and AVA PLONI 1-5, published these statements to third parties, specifically but not limited to, other employers and parents of children in Rabbi Bodkins' community and others.

110.  The untrue statements were made without reasonable care to determine their falsity.

111.  These defamatory publications are libelous and slanderous per se, and have caused Bodkins damages.

112.  As a direct and proximate result of Defendants' defamation of Plaintiff Rabbi Bodkins, Plaintiffs have suffered an injury to their reputation and loss of employment opportunities.

113.  Plaintiffs are entitled to punitive damages in addition to the damages suffered upon a proper evidentiary showing.

## COUNT V - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

114.  Plaintiffs incorporate by reference each and every allegation made in the above-numbered paragraphs 1-79.

115.  The actions by Defendant MAGID, SKUROWITZ and, upon information

- 24 -

and belief, AVRAM PLONI 1-5 and AVA PLONI 1-5, in publicizing the information they published was either intended by Defendants to cause emotional distress to the Plaintiffs or were such that Defendants should have known they would cause such emotional distress, and clearly exceeded the bounds of common decency as would be observed in any civilized community.

116.  Defendants' conduct toward Plaintiffs was willful, wanton and malicious, and was carried out both with a flagrant indifference to the rights of the Plaintiffs and with a subjective awareness that such conduct would result in harm, for which Defendants are answerable in punitive damages.

117.  Plaintiffs have suffered terrible humiliation and emotional pain and distress as a result of Defendants' malicious actions, and are entitled to damages for same.

## COUNT VI - IMPUTED AND IMPLIED LIBEL / SLANDER *PER SE*

118.  Plaintiffs incorporate by reference each and every allegation made in the above-numbered paragraphs 1-79.

119.  Defendants MAGID, SKUROWITZ and, upon information and belief, AVRAM PLONI 1-5 and AVA PLONI 1-5, have maliciously published, or through their gross negligence caused to be published, false or materially-misleading statements, or statements which imply a false impression, about Rabbi Bodkins to third parties, without a privilege to do so.

120.  Plaintiff Rabbi Bodkins was specifically identified in the defamatory matter promulgated by the Defendants.

121.  The libelous or slanderous language stated as a matter of fact that Rabbi Bodkins had sexually molested children and otherwise harmed them.

122.  MAGID stated that Rabbi Bodkins is a danger to children.

123.  MAGID stated that Rabbi Bodkins "caused tremendous damage to so many children I can't even count them on one hand."

- 25 -

124.  MAGID stated that Rabbi Bodkins was, "not coming off [AD-KAN] for a very long time.- probably forever since there is no cure for pedophilia."

125.  The repeated republication of these false statements, orally and in writing, about Rabbi Bodkins was reasonably foreseeable by MAGID, SKUROWITZ and AVRAM PLONI 1-5 and AVA PLONI 1-5.

126.  The written and oral falsities communicated to third parties by MAGID, SKUROWITZ and AVRAM PLONI 1-5 and AVA PLONI 1-5 – and through their gross negligence, by third parties – consisted of false imputations, implications and direct misstatements relating to conduct of Rabbi Bodkins and his business activities, including statements and imputation relating to Bodkins' having sexually molested children.

127.  The libelous or slanderous language was published in that Defendants intentionally or negligently communicated such defamatory language to third parties not the Plaintiffs, specifically but not limited to, other employers and parents of children in Rabbi Bodkins' community and others.

128.  Due to the nature of the false statements, and especially because they speak to and negatively affect Rabbi Bodkins' core character and status in the community, the statements are libelous and slanderous, and malice and damages are presumed. Notwithstanding such a presumption, MAGID, SKUROWITZ and, upon information and belief, AVRAM PLONI 1-5 and AVA PLONI 1-5, acted with malice, moral turpitude, gross negligence, reckless indifference of the rights of others, wantonness, oppression, and/or outrageous aggravation toward Plaintiffs. . If these Defendants' conduct were permitted without rebuke, it would encourage others to engage in such reprehensible misconduct.

129.  As a direct and proximate result of Defendants' defamation of Rabbi Bodkins, Plaintiffs have suffered an injury to their reputation and loss of employment opportunities.

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

130.  The defamatory statements of the Defendants were intentional, with malice or with reckless disregard as to whether they were false or not, and Plaintiffs are entitled to punitive damages in addition to  the damages suffered upon a proper evidentiary showing.

## COUNT VII - CONSPIRACY TO DEFAME

131.  Plaintiffs incorporate each and every allegation in the above-numbered paragraphs 1-130.

132.  Defendants MAGID, SKUROWITZ and, upon information and belief, AVRAM PLONI 1-5 and AVA PLONI 1-5, are parties to a civil conspiracy.

133.  Defendants MAGID, SKUROWITZ and, upon information and belief, AVRAM PLONI 1-5 and AVA PLONI 1-5, tacitly or expressly agreed and conspired to do an unlawful act.

134.  Defendants MAGID, SKUROWITZ and, upon information and belief, AVRAM PLONI 1-5 and AVA PLONI 1-5, conspired to defame Plaintiff Rabbi Bodkins.

135.  Defendants MAGID, SKUROWITZ and, AVRAM PLONI 1-5 and AVA PLONI 1-5, owed a duty to Plaintiff Rabbi Bodkins to abstain from ruining Plaintiff's reputation; Defendants owed Plaintiffs a duty to investigate the truth or falsity of statements about Rabbi Bodkins, and to protect Plaintiffs from unwarranted harm to Plaintiffs' reputation that unjustifiably lowers Plaintiffs in the estimation of the community, and/ or deters third persons, specifically but not limited to, other employers and parents of children in Rabbi Bodkins' community and others, from associating or dealing with Plaintiffs.

136.  Defendants MAGID, SKUROWITZ and, AVRAM PLONI 1-5 and AVA PLONI 1-5, committed overt acts in furtherance of the conspiracy to ruin Bodkins reputation.

137.   Defendants MAGID, SKUROWITZ and, AVRAM PLONI 1-5 and AVA

- 27 -

PLONI 1-5, manipulated and edited postings on the AD-KAN website, ignored reliable information exonerating Plaintiff, published defamatory statements about Rabbi Bodkins and took other actions that Plaintiffs believe will be revealed in discovery.

138.    The conspiracy between Defendants MAGID, AVRAM PLONI 1-5 and AVA PLONI 1-5, and their respective overt acts, caused Plaintiffs to suffer damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against the Defendants MAGID, SKUROWITZ and, upon information and belief, AVRAM PLONI 1-5 and AVA PLONI 1-5, on each cause of action together with the costs and disbursements of this action. Plaintiffs request:

1.    Injunctive relief as necessary to stop the ongoing publication of defamatory statements;

2.    All compensatory damages;

3.    Punitive damages as appropriate;

4.    All fees and costs associated with the disbursement of this action;

5.    Attorneys' fees; and

6.    Any other relief th                                      er.

Date:  December 2, 2013

_____
                                                        SQ.
Florida Bar No. 979510
E-mail address:  Isaac@MyLawyerIsaac.com
**JAROSLAWICZ LAW OFFICES**
1177 Kane Concourse, #222
Bay Harbor Islands, Florida 33154
Telephone:        (305) 398-7739
Facsimile:        (786) 206-3575
       *Counsel for Plaintiffs*
             *Rabbi Steven (Yisroel) Bodkins*
                   *and Mrs. Rivkah Bodkins*

- 28 -

*-and-*

s/: Joshua R. Kon
JOSHUA R. KON, ESQ.
Florida Bar No. 0056147
E-mail address:  jkon@stoklaw.com
ROBERT A. STOK, ESQ.
Florida Bar No. 857051
E-mail address: rstok@stoklaw.com

**STOK FOLK + KON**
18851 NE 29th Avenue, Suite 1005
Aventura, Florida  33180
Telephone: (305) 935-4440
Facsimile: (305) 935-4470

*Co-Counsel*

- 29 -